BRUCE K. CORMIER *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 27962)

Bishop, Gruendel and Borden, Js.

Argued November 13, 2007—officially released January 29, 2008

*David J. Wenc,* for the appellant (plaintiff).

*Drew S. Graham,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Nancy E. Arnold,* assistant attorney general, for the appellee (defendant).

*Opinion*

BORDEN, J. The plaintiff, Bruce K. Cormier, appeals from the judgment of the trial court dismissing his

appeal from the order of the defendant, the commissioner of motor vehicles, disqualifying him for life from holding a commercial driver's license pursuant to General Statutes § 14-44k (h).[1] The plaintiff claims that the court improperly dismissed his appeal because: (1) the defendant improperly interpreted an amendment to the disqualification provision as applying retroactively; (2) if the amendment does apply retroactively, its application to the plaintiff violates his right to be free from ex post facto punishment; and (3) the statutory scheme governing commercial driver's licenses violates his equal protection guarantees. We disagree and affirm the judgment of the trial court.

The underlying facts of the plaintiff's appeal are undisputed. The defendant had issued the plaintiff a

[1] General Statutes § 14-44k (h) provides in relevant part: "A person is disqualified for life [from holding a commercial driver's license] if such person commits two or more offenses specified in subsection (b) of this section . . . . Any person disqualified for life, except a person disqualified under subsection (g) of this section, who has both voluntarily enrolled in and successfully completed an appropriate rehabilitation program, as determined by the commissioner, may apply for reinstatement of such person's commercial driver's license, provided any such applicant shall not be eligible for reinstatement until such time as such person has served a minimum disqualification period of ten years. If a person whose commercial driver's license is reinstated is subsequently convicted of another disqualifying offense, such person shall be permanently disqualified for life and shall be ineligible to reapply for a reduction of the lifetime disqualification."

Thus, although the initial disqualification is for life, the person may apply for reinstatement after ten years if he or she successfully completes a rehabilitation program.

General Statutes § 14-44k (b) lists as among the specified offenses: "operating any motor vehicle while under the influence of intoxicating liquor or drugs or both under section 14-227a . . . ."

Further, General Statutes § 14-44a (a) provides: "No person may drive a commercial motor vehicle on the highways of this state unless the person holds a commercial driver's license issued by this state or another state, with applicable endorsements valid for the vehicle he is driving."

General Statutes § 14-1 (a) (13) defines a commercial motor vehicle as "a vehicle designed or used to transport passengers or property . . . which (A) has a gross vehicle weight rating of twenty-six thousand and one pounds or more, or gross combination weight rating of twenty-six thousand and one pounds or more . . . ."

commercial driver's license at some point prior to March 9, 1998. On March 9, 1998, the plaintiff was arrested for driving while under the influence of intoxicating liquor. This arrest led to his subsequent conviction, on May 4, 1998, of driving while under the influence of intoxicating liquor in violation of General Statutes § 14-227a. The plaintiff was again arrested for driving under the influence of intoxicating liquor on September 7, 2004. This arrest resulted, on February 17, 2005, in the plaintiff's second conviction of violating § 14-227a.

At the times that the plaintiff was arrested, and at the time that he was convicted pursuant to the first arrest, General Statutes (Rev. to 1997) § 14-44k (f), which governed lifetime disqualification from holding commercial driver's licenses, provided in relevant part: "A person is disqualified for life if *convicted of* two or more violations of any of the offenses specified in subsection (b) of this section . . . ." (Emphasis added.) Section 14-227a sets forth one of the specified offenses. After the second arrest, but before the plaintiff was convicted a second time, the legislature amended the provision regarding lifetime disqualification. The amended provision, now § 14-44k (h), which became effective on January 1, 2005, provides in relevant part: "A person is disqualified for life if such person *commits* two or more of the offenses specified in subsection (b) of this section . . . ." (Emphasis added.) Under the amended statute, § 14-227a remains one of the specified offenses.

After receiving notice of the plaintiff's second conviction of violating § 14-227a, the defendant disqualified the plaintiff for life from holding a commercial driver's license pursuant to § 14-44k (h). The defendant notified the plaintiff of the lifetime disqualification, and the plaintiff thereafter requested an administrative hearing. At the hearing, relying on various differences between the lifetime disqualification provision as it existed

before and after the amendment, the plaintiff argued that he had not triggered lifetime disqualification pursuant to the statute as amended. The hearing officer held, among other things, that "[u]nder both § 14-44k (h) and its predecessor, [§] 14-44k (f), the penalty for two or more violations of [§] 14-227a is a lifetime disqualification . . . . The change in language from [§§] 14-44k (f) to 14-44k (h) does not change the penalty or the substance of the statute as it relates to the [plaintiff]." The hearing officer also rejected the plaintiff's equal protection argument. Following the hearing, the defendant disqualified the plaintiff for life.

The plaintiff appealed from the decision of the hearing officer to the trial court. During the subsequent hearing, both parties acknowledged that the plaintiff would have been disqualified properly after his second conviction had the statute remained unamended. The court concluded that the disqualification provision applied to the plaintiff despite the amendment and dismissed the appeal. This appeal followed.

I

The plaintiff first argues that the defendant improperly interpreted the statute in determining that the plaintiff had triggered the lifetime disqualification provision of § 14-44k (h). Although not a model of clarity, the essence of the plaintiff's argument appears to be as follows: as amended, § 14-44k (h) permits the defendant to consider only the commission, after January 1, 2005, of an act that violates § 14-227a, driving while under the influence of intoxicating liquor or drugs, or other specified offenses, in order to disqualify a person from holding a commercial driver's license, whereas previously, the provision allowed the defendant to consider only convictions of specific offenses to disqualify a person. The plaintiff asserts that because he has not committed any acts that violate § 14-227a since the

effective date of the amendment, and the statute did not previously permit the defendant to base a disqualification on commission alone, the defendant retroactively applied the statute by basing the disqualification on the plaintiff's acts committed prior to January 1, 2005. The plaintiff argues that the statute is prospective only, however, so that the defendant may base a lifetime disqualification only on acts committed after January 1, 2005.[2] We do not agree with the plaintiff that there was any retroactive application of the statute in this case.

"Whether a statute applies retroactively raises a question of statutory construction over which our review is plenary." *Walsh* v. *Jodoin*, 283 Conn. 187, 195, 925 A.2d 1086 (2007); see *Bengtson* v. *Commissioner of Motor Vehicles*, 86 Conn. App. 51, 56, 859 A.2d 967 (2004), cert. denied, 272 Conn. 922, 867 A.2d 837 (2005).

We begin by noting the purpose of the statutory scheme of which the disqualification provision is a part. See *Bengtson* v. *Commissioner of Motor Vehicles*, supra, 86 Conn. App. 56. The statutory scheme is aimed at regulating potentially dangerous drivers in order to increase public safety on the state's highways. One set of the dangers identified by the scheme, as relevant to the plaintiff, is posed by drivers who drive while under the influence of alcohol. As we stated in *Kostrzewski* v. *Commissioner of Motor Vehicles*, 52 Conn. App. 326, 342, 727 A.2d 233, cert. denied, 249 Conn. 910, 733 A.2d 227 (1999), "[t]he state has a legitimate interest in highway safety and a responsibility to protect its citizens

---

[2] As a subsidiary argument, the plaintiff also asserts that the statute is ambiguous because it could be interpreted to mean either that any two commissions of a specified offense provides a basis for disqualification or, as he states in his appellate brief, "in the alternative, [the lifetime disqualification provision] is applicable to any two convictions of General Statutes § 14-227a before January 1, 2005, and to any two commissions of § 14-227a . . . after January 1, 2005." In substance, this is simply the plaintiff's retroactivity argument restated. Therefore, we do not address this assertion separately.

from those who would drive on its roads while under the influence of alcohol, thereby placing themselves and others in harm's way." Further, in *Bengtson,* we noted that "Connecticut case law [interpreting Connecticut's motor vehicle licensing statutes] establishes that our legislature has promulgated an unambiguous policy aimed at ensuring that our highways are safe from the carnage associated with drunken drivers." (Internal quotation marks omitted.) *Bengtson* v. *Commissioner of Motor Vehicles,* supra, 60–61. With regard to drivers of commercial vehicles, the legislature has chosen to further this policy, pursuant to § 14-44k (h), by disqualifying for life individuals who have engaged twice in driving while under the influence of intoxicating liquor or drugs or have committed other specified offenses.

The change in the statutory provision pursuant to the 2005 amendment, as relevant to the plaintiff's claim, is as follows: before the amendment, the statute provided in relevant part that "[a] person is disqualified for life if *convicted of* two or more violations of any of the offenses specified in subsection (b)"; currently, the statute provides that "[a] person is disqualified for life if such person *commits* two or more of the offenses specified in subsection (b)." (Emphasis added.) Driving while under the influence of intoxicating liquor or drugs, in violation of § 14-227a, was a specified offense before the amendment, and it remains so after the amendment. The number of instances of engaging in specified offenses before a license holder is subject to a lifetime disqualification also remains the same. Finally, the regulatory solution remains the same, lifetime disqualification from holding a commercial driver's license.

As the plaintiff acknowledged at oral argument, the amendment changed only the evidence the defendant may rely on to disqualify a person. Prior to the amendment, the defendant could not disqualify a license holder until the license holder had been convicted of

engaging in the underlying specified offenses, here, driving under the influence of intoxicating liquor. The amendment now allows the defendant to consider less robust evidence to conclude that the license holder has, in fact, engaged in the offenses and therefore poses the danger identified by the statute.[3] As the plaintiff also acknowledged, the intent of the legislature in amending the statute was to "widen the net" for those potentially dangerous drivers who are subject to disqualification, and the lesser evidentiary burden was the means it employed to accomplish this. It was not, as the plaintiff's argument implies, the intention of the legislature to replace the prior disqualification scheme with a new one but, rather, to expand the scope of the existing scheme by lowering the evidentiary requirement after January 1, 2005. The plaintiff's interpretation of the provision would serve to frustrate the clear public safety purpose of the statutory scheme, as well as the purpose of the amendment, by allowing a license holder who had been twice convicted of engaging in specified offenses to start with a clean slate. Finally, the parties acknowledged at the hearing, and the plaintiff does not dispute on appeal, that the plaintiff would have been disqualified for life properly had the statute remained unamended; thus, the issue of adequate notice, which generally arises when substantive statutes are retroactively applied; see, e.g., *Skakel* v. *Benedict*, 54 Conn. App. 663, 692, 738 A.2d 170 (1999); is not present here.

We agree with the defendant that he did not apply the statute retroactively when he disqualified the plaintiff.

---

[3] The plaintiff asserts that the statute as amended will lead to absurd results because a mere arrest for engaging in the specified offenses could lead to a lifetime disqualification. Because the defendant did not suspend the plaintiff's license until after the plaintiff was convicted twice of violating General Statutes § 14-227a, we need not determine here what level of proof the defendant must have before concluding that a license holder has, in fact, engaged in the predicate offenses.

Therefore, we need not consider whether such an application would implicate the prohibition against ex post facto punishment.

## II

Next, the plaintiff challenges the constitutionality of Connecticut's commercial driver's license scheme under the rubric of equal protection of the laws. He argues that by requiring drivers of vehicles that are 26,001 pounds or heavier to have a commercial driver's license,[4] subject to a lifetime disqualification pursuant to § 14-44k (h), without requiring the same of drivers of lighter vehicles, the statutory scheme irrationally and impermissibly discriminates against drivers of the heavier vehicles in violation of the plaintiff's equal protection rights. This argument is without merit.

When the challenged law "does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." (Internal quotation marks omitted.) *Barton v. Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 814, 730 A.2d 1149 (1999). Pursuant to a rational basis review, the equal protection clause "is satisfied so long as there is a plausible policy reason for the classification . . . the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker . . . and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational . . . ." (Citations omitted; internal quotation marks omitted.) Id., 814–15. Further, "[i]t is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 110, 69 S. Ct. 463, 93 L. Ed. 533 (1949); see

---

[4] See footnote 1.

also *Benjamin* v. *Bailey*, 234 Conn. 455, 480, 662 A.2d 1226 (1995).

The plaintiff acknowledges that the purpose of the classification is to improve highway safety. The plaintiff asserts, however, that the "proffered justification for the . . . law . . . is underinclusive. . . . [D]rivers of trucks that are less than 26,001 pounds are not regulated by [the commercial driver's license scheme]." The plaintiff also asserts that no legitimate rationale supports the legislature's determination to require drivers of vehicles weighing 26,001 pounds or more to have a commercial driver's license while not requiring drivers of vehicles of lesser weight to be subject to the same requirement.

The plaintiff's argument that the statute is impermissibly underinclusive is unavailing because the legislature need not attempt to eliminate all danger on highways in order to enact legislation aimed at reducing some of the danger. See *Benjamin* v. *Bailey*, supra, 234 Conn. 480.

It is obvious that the legislature could rationally conclude that heavier vehicles present a greater potential risk to motorists than lighter ones and choose 26,001 pounds as the line dividing the two classes. Instead, the plaintiff speculates that the line drawn was based purely on political considerations, that is, the members of the legislature wanted to gain, or maintain, the votes of those who drive vehicles lighter than 26,001 pounds and, thus, did not regulate them as strictly as drivers of vehicles in excess of 26,001 pounds. The plaintiff provides no evidence that this was the case, but even if it were, this would be of no help to the plaintiff. Pursuant to a rationality review, we are limited to considering whether the statutory provision has a rational relation to a valid purpose of the provision. See *Federal Communications Commission* v. *Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L.

Ed. 2d 211 (1993). Because we are satisfied that the classification is rationally related to highway safety, we reject the plaintiff's equal protection claim.

The judgment is affirmed.

In this opinion the other judges concurred.