JOSE R. SANTIAGO, JR. *v.* COMMISSIONER OF
MOTOR VEHICLES
(AC 32973)

Gruendel, Sheldon and Flynn, Js.

Argued January 12—officially released April 10, 2012

*Jonathan Ross Sills,* for the appellant (plaintiff).

*Drew S. Graham,* assistant attorney general, with whom, on the brief, was *George Jepsen,* attorney general, for the appellee (defendant).

*Opinion*

GRUENDEL, J. Pursuant to General Statutes § 4-183, the plaintiff, Jose R. Santiago, Jr., commenced an administrative appeal in the Superior Court from the decision of the defendant, the commissioner of motor vehicles, suspending his motor vehicle operator's license for ten months and his commercial driver's license for life. Following a hearing, the court dismissed that appeal. The plaintiff now challenges the propriety of that determination. Specifically, he claims that the defendant erred in (1) admitting into evidence certain documents at the administrative hearing, (2) finding that the plaintiff's blood alcohol content was tested within two hours of his operation of a motor vehicle and (3) ordering a lifetime suspension of the plaintiff's commercial driver's license. We affirm the judgment of the Superior Court.

The facts largely are undisputed. At the time of the incident giving rise to this appeal, the plaintiff had a history of operating a motor vehicle under the influence of alcohol. On August 14, 2005, he was arrested and charged with a violation of General Statutes (Rev. to 2005) § 14-227b due to his refusal to submit to a chemical alcohol test. His operator's license was suspended on September 28, 2005, pursuant to General Statutes (Rev. to 2005) § 14-227b, and restored on March 28,

2006. The plaintiff subsequently obtained his commercial driver's license in 2009.

On the evening of March 28, 2010, the plaintiff was arrested in West Hartford following an automobile accident and charged, inter alia, with operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes (Rev. to 2009) § 14-227a.[1] After failing multiple field sobriety tests, the plaintiff was transported to the Newington police department, where two breath tests were performed at 8:33 p.m. and 8:50 p.m. Those tests yielded blood alcohol content readings of 0.182 and 0.176, respectively.

A license suspension hearing was held on April 26, 2010. At that administrative hearing, the arresting police officer, Raymond Narciso of the West Hartford police department, testified. In addition, copies of the plaintiff's driving history, the case/incident report prepared by Narciso and an A-44 form,[2] which included the breath test results, were admitted into evidence, the latter two over the objection of the plaintiff's counsel.[3] Thereafter, the defendant, through a hearing officer, reached the following findings of fact and conclusions of law: "1. The police officer had probable cause to arrest [the plaintiff] for a violation specified in [§] 14-227b . . . . 2. The [plaintiff] is the holder of a commercial driver's license. 3. The [plaintiff] was placed under arrest. 4. [The plaintiff] was operating the motor vehicle. 5. The [plaintiff] submitted to the test or analysis and the results indicated a [blood alcohol content] of .16 [percent] or more." In addition, the defendant determined

[1] The plaintiff also was charged with making an improper left turn in violation of General Statutes § 14-242.

[2] "The A-44 form is used by the police to report an arrest related to operating a motor vehicle under the influence and the results of any sobriety tests administered or the refusal to submit to such tests." *Roy* v. *Commissioner of Motor Vehicles*, 67 Conn. App. 394, 396 n.3, 786 A2d 1279 (2001).

[3] The plaintiff did not appear at his license suspension hearing.

that "[s]ubstantial evidence is found to establish operation within [two] hours of the commencement of the first breath test pursuant to the evidence and the testimony of the police officer." On the basis of the foregoing, the defendant, through the hearing officer, ordered the suspension of the plaintiff's motor vehicle operator's license for ten months and his commercial driver's license for life.

Pursuant to § 4-183, the plaintiff appealed from that decision to the Superior Court. The court conducted a hearing on November 17, 2010, at the conclusion of which it dismissed the appeal. At the request of the plaintiff, the court on March 29, 2011, issued an articulation on each of the four issues raised in the administrative appeal.[4] This appeal followed.

Before considering the defendant's specific claims, we note the standard applicable to our review of administrative decisions. "[J]udicial review of the [defendant's] action is governed by the Uniform Administrative Procedure Act [General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the

---

[4] The court's articulation addressed (1) whether the "hearing officer erred in admitting the A-44 form because the form was a 'stale form,' not disclosing the consequences to one holding a commercial driver's license . . . of refusing or taking the proffered 'breath test,'" (2) whether "the narrative supplements to the A-44 form [set forth in the police report] were unreliable as the A-44 was signed on March 28, 2010, while the [arresting] officer signed the attachments on March 29, 2010," (3) whether "the hearing officer erroneously concluded that the first test was properly given . . . within two hours of operation," and (4) whether "the hearing officer erred in imposing a lifetime ban" on the plaintiff's commercial driver's license.

administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Winsor* v. *Commissioner of Motor Vehicles*, 101 Conn. App. 674, 679–80, 922 A.2d 330 (2007).

I

The plaintiff first claims that the defendant, through the hearing officer at the license suspension hearing, improperly admitted into evidence both the A-44 form and the "case/incident report" (report) that accompanied it. We disagree.

At the outset, we note that "[h]earings before administrative agencies, such as those before the commissioner of motor vehicles, are informal and are not governed by the strict or technical rules of evidence." *Pizzo* v. *Commissioner of Motor Vehicles*, 62 Conn. App. 571, 579, 771 A.2d 273 (2001). Rather, the critical inquiry is whether "the evidence is reliable and probative." *Lawrence* v. *Kozlowski*, 171 Conn. 705, 710, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977); *Bialowas* v. *Commissioner of Motor Vehicles*, 44 Conn. App. 702, 712, 692 A.2d 834 (1997); see 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 6, pp. 5–6. In administrative hearings involving the defendant, the hearing officer is the arbiter of the credibility of evidence. See *Pizzo* v. *Commissioner of Motor Vehicles*, supra, 579. On appeal, "[t]he plaintiff bears the burden of demonstrating that a hearing officer's evidentiary ruling is arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) *Winsor* v. *Commissioner of Motor Vehicles*, supra, 101 Conn. App. 687.

A

The plaintiff claims that the defendant improperly admitted into evidence an allegedly outdated A-44 form that "did not fully reflect the law of . . . Connecticut." More precisely, he alleges that the form used in this case did not disclose the consequences of refusing or taking a breath test on his commercial driver's license, thereby precluding its admission at his license suspension hearing. He is mistaken.

General Statutes § 14-227b, commonly referred to as the implied consent statute, governs license suspension hearings. Section 14-227b (g) provides in relevant part that "[t]he hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that such person had an elevated blood alcohol content; and (4) was such person operating the motor vehicle. . . ." Our Supreme Court repeatedly has held that a license suspension hearing "is expressly limited to the four issues enumerated" in that statute. *Buckley* v. *Muzio*, 200 Conn. 1, 7, 509 A.2d 489 (1986); see *Volck* v. *Muzio*, 204 Conn. 507, 512, 529 A.2d 177 (1987) ("we continue to adhere to our declaration that a license suspension hearing must be limited to the four issues set forth in [General Statutes (Rev. to 1987)] § 14-227b [d]"). The court further has held that "whether an operator was warned of the consequences of refusing to submit to chemical tests is not made one of the issues to be adjudicated" pursuant to § 14-227b. Id., 520.

Section 14-227b (a) provides in relevant part that "[a]ny person who operates a motor vehicle in this state

shall be deemed to have given such person's consent to a chemical analysis of such person's blood, breath or urine . . . ." As such, "[w]hen a driver refuses a test to which he is deemed by the statute to have consented, that refusal need not be attended by the kind of warning required in criminal proceedings for a waiver of significant legal rights. The legislature, by limiting the issue at the license suspension hearing to whether a refusal has occurred, has chosen to rely on the presumption that everybody knows the law, including the consequences of breaking it." *Volck* v. *Muzio*, supra, 204 Conn. 520–21. Thus, inquiry into whether an operator of a motor vehicle properly was advised of the consequences of refusing or consenting to a breath test plays no part in the license suspension hearing, as the "failure to warn the plaintiff of the consequences of his refusal of testing would not constitute a ground for setting aside the order of suspension." Id., 521.

Moreover, the plaintiff cannot establish any prejudice resulting from the use of an A-44 form that did not disclose the consequences of refusing or taking a breath test. As the Superior Court aptly observed in its articulation, General Statutes § 14-44k calls for the same penalty whether the breath test is refused or failed by the holder of a commercial driver's license. See General Statutes § 14-44k (c) ("a person is disqualified from operating a commercial motor vehicle for one year if the commissioner finds that such person has refused to submit to a test to determine such person's blood alcohol concentration while operating any motor vehicle, or has failed such a test when given"); General Statutes § 14-44k (h) ("[a] person is disqualified for life if the commissioner takes suspension actions against such person for two or more alcohol test refusals or test failures, or any combination of such actions, arising from two or more separate incidents"). Although the plaintiff in this appeal asserts that "had the [defendant]

. . . excluded the form A-44 and the attached police report, there would be no evidence of intoxication," he neglects the fact that Narciso appeared at the administrative hearing and testified to the truth and accuracy of those documents, which detailed the plaintiff's breath test results. The plaintiff's claim, therefore, is untenable.

B

The plaintiff also alleges that the defendant erred in admitting into evidence the report that was attached to the A-44 form. He maintains that the report was unreliable because Narciso signed the A-44 form on March 28, 2010, but signed the report on March 29, 2010. We do not agree.

Section 14-227b (c) requires such reports to "be subscribed and sworn to under penalty of false statement . . . by the arresting officer." The oath section of the A-44 form, which immediately precedes Narciso's signature, states that "[t]his report of chemical alcohol test or refusal and the attachments hereto . . . are subscribed and sworn to by me, the arresting officer, under penalty of false statement . . . ." That signature is dated March 28, 2010. Narciso also signed all three pages of the report that was attached to the A-44 form, albeit on March 29, 2010.

Significantly, Narciso testified at the plaintiff's license suspension hearing. At that time, he swore to the truth and accuracy of the report under penalty of false statement. In addition, although Narciso was cross-examined by the plaintiff, no questions were posed relating to his preparation of the report. Although we cannot condone the practice of signing an A-44 form that incorporates by reference an attached police report that was not signed at that time, its admission was harmless in the present case in light of Narciso's sworn testimony at the hearing. In light of that testimony, the

defendant reasonably could have determined that the report was both reliable and probative. Accordingly, it was not an abuse of discretion to admit the report into evidence.

## II

The plaintiff next claims that the defendant erroneously found that his blood alcohol content was tested within two hours of his operation of a motor vehicle, as required by § 14-227b (c). We review that finding pursuant to the substantial evidence standard. *Winsor* v. *Commissioner of Motor Vehicles*, supra, 101 Conn. App. 679–80.

In his testimony at the plaintiff's license suspension hearing, Narciso detailed the events of the evening of March 28, 2010. He testified that he was dispatched to the accident involving the plaintiff's motor vehicle at 7:26 p.m. He explained that he "cannot say exactly at this particular moment when [the accident] happened. I can give . . . a parameter, within a few minutes of dispatch. . . . [B]ased on the nature of the vehicles, where they were at, the fact that they were still leaking fluids, that the occupants were still around the area at the time and what they said to me at the time . . . ." On that basis, Narciso opined that the accident was relatively fresh. In addition, Narciso testified that the plaintiff informed him that he had consumed his last drink at seven o'clock. When asked if that time pertained to 7:00 a.m. or 7:00 p.m., Narciso replied that the plaintiff "had stated to me earlier that he had been having dinner, and he had drinks with dinner, so I assume by dinner he was responding in the p.m." Likewise, Narciso's report states in relevant part: "While speaking with [the plaintiff] . . . I detected the odor of an alcoholic beverage on his breath. . . . I then asked [the plaintiff] if he had consumed any alcoholic

beverages *that night.* He replied that he had 'two beers' *with dinner.*" (Emphasis added.)

It is undisputed that the first breath test was administered on the plaintiff at 8:33 p.m. Narciso's testimony at the administrative hearing and his report constituted substantial evidence on which the defendant reasonably could find that the breath test was administered within two hours of the plaintiff's operation of a motor vehicle.

### III

As a final matter, the plaintiff contends that the defendant improperly ordered a lifetime suspension of his commercial driver's license pursuant to General Statutes § 14-44k (h), which is implicated when the defendant takes suspension actions against a person for, inter alia, two or more alcohol test refusals and/or failures arising from two or more separate incidents. The plaintiff maintains that this statutory requirement does not apply in the present case because he had not obtained a commercial driver's license at the time of his first license suspension.

The plaintiff's claim presents a question of statutory construction over which our review is plenary. *Ames* v. *Commissioner of Motor Vehicles,* 267 Conn. 524, 530, 839 A.2d 1250 (2004). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship

to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *State* v. *Custer*, 110 Conn. App. 836, 840, 956 A.2d 604 (2008).

Section 14-44k (h) provides in relevant part that "[a] person is disqualified for life [from holding a commercial driver's license] if the [defendant] takes suspension actions against such person for two or more alcohol test refusals or test failures, or any combination of such actions, arising from two or more separate incidents. . . ."[5] Significantly, neither § 14-44k (h) nor any other provision in that statute contains language limiting application thereof to suspensions ordered after said person has obtained a commercial driver's license. To the contrary, § 14-44k (h) plainly and unambiguously pertains to "suspension actions against [a] person for two or more alcohol test refusals or test failures, or any combination of such actions, arising from two or more separate incidents. . . ." It is undisputed that the defendant took suspension action against the plaintiff on September 28, 2005, and April 27, 2010, for two separate incidents in which the plaintiff violated § 14-227b.[6]

The absence of language limiting the application of § 14-44k (h) to suspensions only occurring after a person has obtained a commercial driver's license entirely

[5] We note that § 14-44k (h) also provides in relevant part that "[a]ny person disqualified for life . . . who has both voluntarily enrolled in and successfully completed an appropriate rehabilitation program, as determined by the commissioner, may apply for reinstatement of such person's commercial driver's license, provided any such applicant shall not be eligible for reinstatement until such time as such person has served a minimum disqualification period of ten years. . . ."

[6] The defendant's September 28, 2005 suspension action stemmed from the plaintiff's refusal to submit to a blood alcohol test on August 14, 2005, while the present suspension resulted from his failure of two breath tests.

is consistent with the underlying purpose of this statutory scheme. As we have observed, "[t]he statutory scheme is aimed at regulating potentially dangerous drivers in order to increase public safety on the state's highways. One set of the dangers identified by the scheme, as relevant to the plaintiff, is posed by drivers who drive while under the influence of alcohol. . . . [T]he state has a legitimate interest in highway safety and a responsibility to protect its citizens from those who would drive on its roads while under the influence of alcohol, thereby placing themselves and others in harm's way. . . . Connecticut case law [interpreting our motor vehicle licensing statutes] establishes that our legislature has promulgated an unambiguous policy aimed at ensuring that our highways are safe from the carnage associated with drunken drivers. . . . With regard to drivers of commercial vehicles, the legislature has chosen to further this policy, pursuant to § 14-44k (h), by disqualifying for life individuals who have engaged twice in driving while under the influence of intoxicating liquor or drugs or have committed other specified offenses." (Citations omitted; internal quotation marks omitted.) *Cormier* v. *Commissioner of Motor Vehicles*, 105 Conn. App. 558, 563–64, 938 A.2d 1258 (2008). It is a "fundamental tenet of statutory construction . . . that statutes are to be considered to give effect to the apparent intention of the lawmaking body." (Internal quotation marks omitted.) *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 531. We simply cannot reconcile the plaintiff's interpretation of § 14-44k (h) with the legislature's purpose in enacting this remedial statutory scheme.

Under the plaintiff's novel interpretation of § 14-44k (h), the defendant could have taken suspension action against a person on multiple occasions for alcohol test refusals and/or failures prior to that person obtaining a commercial driver's license, yet the defendant would

be powerless to order a lifetime suspension upon a subsequent alcohol test refusal or failure that transpired after the commercial driver's license was obtained. To paraphrase the words of this court in *Cormier*, that interpretation would frustrate the clear public safety purpose of this statutory scheme by allowing a license holder whose license repeatedly has been suspended to start with a clean slate. See *Cormier* v. *Commissioner of Motor Vehicles*, supra, 105 Conn. App. 565. We decline to adopt such a bizarre interpretation of § 14-44k (h). See *State* v. *Sandoval*, 263 Conn. 524, 553, 821 A.2d 247 (2003) ("we interpret statutes to avoid bizarre or nonsensical results").

At its essence, the plaintiff's claim asks us to rewrite § 14-44k (h) so as to insert a provision requiring suspension upon two or more alcohol test refusals and/or failures *only while holding a commercial driver's license.* That we refuse to do. We are obligated to "construe a statute as written. . . . Courts may not by construction supply omissions . . . or add exceptions . . . . The intent of the legislature . . . is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 216, 901 A.2d 673 (2006). Because the plain language indicates the legislature's intent to apply § 14-44k (h) to "suspension actions against such person for two or more alcohol test refusals or test failures, or any combination of such actions, arising from two or more separate incidents," rather than simply those incurred only while one holds a commercial driver's license, we conclude, as we did in *Cormier*, that the defendant did not apply that statute in retroactive fashion. See *Cormier*

v. *Commissioner of Motor Vehicles*, supra, 105 Conn. App. 564–65.

"The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 150, 12 A.3d 948 (2011). Having considered the text of the statute itself and its relationship to other statutes, we conclude that § 14-44k (h) contains no ambiguity. It means what it says: a person is disqualified for life if the commissioner takes suspension actions against such person for two or more alcohol test refusals or test failures, or any combination of such actions, arising from two or more separate incidents.

The judgment is affirmed.

In this opinion the other judges concurred.