******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BRENMOR PROPERTIES, LLC *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF LISBON
## (SC 19665)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Syllabus*

The plaintiff developer appealed to the trial court from the decision of the defendant planning and zoning commission denying its application for an affordable housing subdivision pursuant to statute (§ 8-30g). The commission had denied that application on the ground that the project, as proposed, did not comply with a municipal ordinance governing the construction of roads or the state fire safety code. The trial court rendered judgment sustaining the plaintiff's appeal, concluding that neither noncompliance with the ordinance nor noncompliance with the fire code constituted a valid ground on which to deny the application, and remanded the matter to the commission with direction to grant the application as presented. The commission appealed to the Appellate Court, which concluded that the trial court properly sustained the plaintiff's appeal and did not abuse its discretion by ordering the commission to approve the application as is. The commission, on the granting of certification, appealed to this court from the Appellate Court's judgment. *Held* that the Appellate Court properly affirmed the judgment of the trial court, this court having concluded that, following consideration of the arguments presented, the Appellate Court's opinion should be adopted as the proper statement of the issues and the applicable law concerning those issues, and, in light of the commission's concession before both the Appellate Court and this court that the abuse of discretion standard of review applied to the trial court's decision to order the commission to approve the plaintiff's application as presented, this court declined to consider the standard applicable to a trial court's affordable housing remedy under § 8-30g.

Argued January 20—officially released June 27, 2017

*Procedural History*

Appeal from the decision of the defendant denying the plaintiff's application for subdivision approval, brought to the Superior Court in the judicial district of New London and transferred to the judicial district of Hartford, Land Use Litigation Docket; thereafter, the matter was tried to the court, *Shluger, J.*; judgment sustaining the appeal, from which the defendant, on the granting of certification, appealed to the Appellate Court, *Gruendel*, *Mullins* and *Sullivan*, *Js.*, which affirmed the judgment of the trial court, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Michael A. Zizka*, for the appellant (defendant).

*Timothy S. Hollister*, with whom were *Beth Bryan Critton* and *Andrea L. Gomes*, for the appellee (plaintiff).

*Mark K. Branse* and *Caleb F. Hamel* filed a brief for the Garden Homes Management Corporation as amicus curiae.

*Opinion*

PER CURIAM. This certified appeal requires us to consider the relationship between a town's roadway construction standards and the more flexible treatment given to development proposals made pursuant to the Affordable Housing Appeals Act, General Statutes § 8-30g. The defendant, the Planning and Zoning Commission of the Town of Lisbon (commission), appeals, upon our grant of its petition for certification, from the judgment of the Appellate Court affirming the judgment of the trial court sustaining the administrative appeal of the plaintiff, Brenmor Properties, LLC. *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, 162 Conn. App. 678, 680, 136 A.3d 24 (2016); see footnote 4 of this opinion. On appeal, the commission claims that the Appellate Court improperly concluded that (1) the commission was required to grant the plaintiff's application for subdivision approval, despite the application's lack of compliance with a municipal road ordinance (road ordinance),[1] and (2) the trial court properly ordered the commission to approve the plaintiff's application "as is," rather than remand the case to the commission for consideration of potential conditions of approval. We disagree and, accordingly, we affirm the judgment of the Appellate Court.

The record and the Appellate Court's opinion reveal the following facts and procedural history.[2] "At all relevant times, the plaintiff owned a 12.92 acre parcel of undeveloped land with frontage on Ames Road and Route 169 in Lisbon (property). The property contains a small pond and 1.9 acres of the property are designated as wetlands. In May, 2012, the plaintiff filed an application with the commission pursuant to . . . § 8-30g for approval of an affordable housing subdivision. The proposed subdivision consisted of nineteen residential lots with an average size of 29,620 square feet. On all but one lot, a single-family, three bedroom modular home would be erected. The proposal also included a dedicated septic system and well for each home. With respect to price restrictions, six of the eighteen proposed homes would be deed-restricted for forty years at prices within the economic reach of moderate income households . . . .

"Four of the proposed lots were to be located on the westerly side of the property and would be accessed by driveways on Route 169. The remaining lots were to be located on the easterly side of the property adjacent to Ames Road and would be accessed by a private roadway, which the plaintiff describes as a common driveway and the commission characterizes as an interior road network. This appeal concerns that roadway." (Footnotes omitted; internal quotation marks omitted.) *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 681–82.

The commission held a public hearing on the plaintiff's application over the course of five evenings in 2012. See id., 682–83. "In response to various comments raised during that hearing, the plaintiff submitted multiple revisions to its proposal, culminating with its November 13, 2012 'final submission materials.' Following the conclusion of the public hearing, the commission's legal counsel . . . prepared a document dated January 8, 2013, and entitled 'Brenmor Subdivision Application Issues and Potential Conditions of Approval' (document). That document delineated seven issues and provided analysis thereof. At the commission's regular meeting on January 8, 2013, the commission reviewed those seven issues. The proposed roadway's nonconformance with the . . . road ordinance . . . generated the most discussion, as the roadway violated its minimum width and maximum grade requirements." (Footnote omitted.) Id., 683. Following deliberations at the commission's regular meeting on January 8, 2013, the commission voted unanimously to deny the plaintiff's application, with counsel for the commission remarking for the record that the plaintiff was "welcome" to return with a modified proposal "where the road meets town standards because . . . that would solve most of . . . the [commission's] issues . . . ." Id., 684–85.

"On January 30, 2013, the plaintiff filed with the commission a modified affordable housing proposal pursuant to § 8-30g (h)." Id., 685–86. Although the modified application "contained certain modifications that the plaintiff made 'in direct response to the [commission's] January 8, 2013 denial.' That revised plan nonetheless did not modify the width or grade of the proposed roadway . . . so as to fully comply with the requirements of the road ordinance. In its written response to the commission's January 8, 2013 denial of its subdivision application, the plaintiff acknowledged that the commission at that time had proposed, as a potential condition of approval, that the roadway 'shall conform to standards established' in the road ordinance. The plaintiff nonetheless submitted that such a condition was unnecessary, as '[t]here is no expert or other testimony in the record that the proposed [roadway is] unsafe.' The plaintiff thereafter further revised its proposal, as reflected in its revised plan that was received by the commission on March 5, 2013." (Footnote omitted.) Id., 686–87.

"On March 5, 2013, the commission held a public hearing on the plaintiff's modified application, as required by § 8-30g (h)." Id., 687. Admitting that the " 'internal roadway system' " did not satisfy the road ordinance, the plaintiff presented the commission with a traffic engineer's study that "concluded that the proposed subdivision was 'going to be a very low traffic generator, given the . . . small number of units,' " with

proposed roadways that " 'will provide safe and efficient access, egress, and circulation for the residents and guests of the subdivision as well as the general public entering or passing the property. In addition, the [proposed roadway] interior to the site will sufficiently accommodate circulation by emergency vehicles.' " Id., 687–88. As part of the plaintiff's modified application, the traffic engineer provided "both a written 'traffic safety review' and testimony before the commission, in which he opined that the plan set forth in the resubmission 'does provide for safe traffic operations and site circulation. It provides for safe ingress and egress for passenger cars and emergency vehicles [and] does not present any public health or safety concerns.' " Id., 688.

"At that public hearing, the commission's professional staff also commented on the modified proposal." Id. Lisbon's town planner and town engineer "disagreed with the plaintiff's assertion that the proposed roadway qualified as a driveway, as it would provide 'the only access to fifteen single-family dwellings,' " and emphasized that the "the proposed roadway did not comply with the minimum width or maximum grade requirements of the road ordinance." Id. Lisbon's fire marshal also submitted a letter expressing his concern that the proposed roadway did not conform to the State of Connecticut Fire Prevention Code (fire code). See id., 690, 708. Although the commission's professional staff members "repeatedly emphasized that the proposed roadway did not comply with the requirements of the road ordinance, [they did not indicate] that compliance was necessary to protect a substantial public interest or that the risk of harm thereto clearly outweighed the need for affordable housing." Id., 689.

"The commission deliberated the merits of the plaintiff's [modified] application at its April 2, 2013 meeting." Id. The commission voted unanimously, with one commissioner abstaining, to deny the modified application based on the recommendations of Lisbon's engineer and fire marshal given, inter alia, the failure of the internal roadways to conform to the road ordinance and fire code. Id., 690–91.

"From that decision, the plaintiff appealed to the Superior Court. On June 13, 2014, the court issued its memorandum of decision. In sustaining the plaintiff's appeal, the court concluded that neither noncompliance with the road ordinance nor noncompliance with the fire code constituted a valid ground on which to deny the plaintiff's application.[3] As a result, the court reversed the 'denial of the plaintiff's resubmission and remand[ed] the case to the [commission] with direction to grant the plaintiff's resubmission as is.' " (Footnote altered.) Id., 691.

Following its grant of the commission's petition for certification to appeal pursuant to General Statutes § 8-

8 (o), the Appellate Court affirmed the judgment of the trial court in a unanimous and comprehensive opinion. See id., 680, 691. The Appellate Court upheld the trial court's determination that the plaintiff's noncompliance with the road ordinance did not constitute a valid ground on which the commission could deny its modified affordable housing application under § 8-30g. See id., 693. The Appellate Court first concluded that, "the establishment of town-wide standards [by ordinance] for road construction is [a] matter of public health and safety that a commission may properly consider under the [A]ffordable [H]ousing [A]ppeals [A]ct," although "any deviation from those standards" does not constitute "a per se ground for denial of an affordable housing application." (Internal quotation marks omitted.) Id., 699–700. The Appellate Court then concluded that the evidence in the record demonstrated that fire and traffic safety were not adversely affected by the plaintiff's noncompliance with the road ordinance with respect to the proposed subdivision's internal roadways, which were in essence low traffic driveways that served only the homes in the subdivision. Id., 700–702. Turning to the remedy ordered by the trial court, the Appellate Court then held that the trial court did not abuse its discretion in remanding the case to the commission with direction to grant the plaintiff's modified application "as is," rather than for consideration of conditions of approval. Id., 714. This certified appeal followed.[4]

Our examination of the record and briefs and our consideration of the arguments of the parties persuade us that the judgment of the Appellate Court should be affirmed. Because the Appellate Court's well reasoned opinion fully addresses the certified issues, it would serve no purpose for us to repeat the discussion contained therein. We therefore adopt the Appellate Court's opinion as the proper statement of the issues and the applicable law concerning those issues. See, e.g., *Recall Total Information Management, Inc.* v. *Federal Ins. Co.*, 317 Conn. 46, 51, 115 A.3d 458 (2015); *State* v. *Buie*, 312 Conn. 574, 583–84, 94 A.3d 608 (2014).

We make one observation, however, with respect to the Appellate Court's analysis of the second certified issue,[5] which concerns the remedy ordered by the trial court. Consistent with the commission's concession before that court, the Appellate Court determined that the abuse of discretion standard of review applies to the trial court's decision to order the commission to approve the plaintiff's application "as is," rather than remand the case to the commission for consideration of potential conditions of approval.[6] *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 711 and n.31. The commission has reiterated that concession in its brief and at oral argument before this court. Accordingly, we need not consider that issue further, and apply the abuse of discretion standard of review in this certified appeal with respect to the trial

court's affordable housing remedy under § 8-30g as upheld by the Appellate Court.[7]

The judgment of the Appellate Court is affirmed.

[1] See Town of Lisbon, "An Ordinance Concerning the Construction and Acceptance of Roads in the Town of Lisbon Connecticut" (June 29, 1995); see also *Brenmor Properties*, *LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 683 n.10.

[2] We note that the Appellate Court's opinion contains a more detailed recitation of the facts and procedural history underlying this certified appeal. See *Brenmor Properties*, *LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 681–91.

[3] The trial court declined to consider the fire marshal's letter expressing concerns about noncompliance with the fire code because it was not based on an analysis of the modified proposal that is the subject of this appeal. See *Brenmor Properties*, *LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 707–708.

[4] We granted the commission's petition for certification for appeal limited to the following issues: (1) "Did the Appellate Court properly conclude that the trial court correctly determined that the plaintiff's noncompliance with the road ordinance did not constitute a valid ground on which to deny its modified affordable housing application?"; and (2) "Did the Appellate Court correctly determine that the trial court properly ordered the commission to approve the plaintiff's subdivision application 'as is' rather than allowing the commission, on remand, to consider appropriate conditions of approval?" *Brenmor Properties*, *LLC* v. *Planning & Zoning Commission*, 320 Conn. 928, 133 A.3d 460 (2016).

[5] Although we agree entirely with the Appellate Court's resolution of the first certified issue, we briefly address the commission's argument that the Appellate Court improperly failed to address two cases that it cited in support of its authority to deny the plaintiff's application on the basis of its failure to comply with the roadway ordinance. Specifically, the commission relies on *Blue Sky Bar*, *Inc.* v. *Stratford*, 203 Conn. 14, 25–29, 523 A.2d 467 (1987), which rejected an equal protection challenge to an ordinance prohibiting vending from motor vehicles on the town's streets or public property, and *Cormier* v. *Commissioner of Motor Vehicles*, 105 Conn. App. 558, 566–68, 938 A.2d 1258 (2008), which rejected an equal protection challenge to the distinction between vehicles weighing less than 26,001 pounds for purposes of lifetime commercial driver's license disqualification under General Statutes § 14-44k (h). The commission argues that *Blue Sky Bar*, *Inc.*, and *Cormier* stand for the propositions that "safety standards in general are not susceptible to bright line analysis," and the "town's legislative judgment must prevail," notwithstanding its failure to provide "analytical data" to support its decision. Having reviewed these cases, we believe that the Appellate Court reasonably may have deemed them to be so inapposite as not to warrant mention, because they concern facial constitutional challenges to municipal ordinances calling for rational basis review. *Blue Sky Bar, Inc.* v. *Stratford*, supra, 28–29; *Cormier* v. *Commissioner of Motor Vehicles*, supra, 566–67. In contrast, the present case requires the court to apply a nuanced balancing test in determining whether an individual affordable housing application should be granted relief from a particular municipal ordinance pursuant to § 8-30g. See, e.g., *River Bend Associates*, *Inc.* v. *Zoning Commission*, 271 Conn. 1, 26, 856 A.2d 973 (2004).

[6] We note that appellate review of the trial court's other decisions under § 8-30g (g) is plenary. Thus, we first engage in plenary review of "whether the decision from which such appeal is taken and the reasons cited for such decision are supported by sufficient evidence in the record. . . . Specifically, the court must determine whether the record establishes that there is more than a mere theoretical possibility, but not necessarily a likelihood, of a specific harm to the public interest if the application is granted." (Citation omitted; internal quotation marks omitted.) *River Bend Associates*, *Inc.* v. *Zoning Commission*, 271 Conn. 1, 26, 856 A.2d 973 (2004). "If the court finds that such sufficient evidence exists, then it must conduct a plenary review of the record and determine independently whether the commission's decision was [1] necessary to protect substantial interests in health, safety or other matters that the commission legally may consider, [2] whether the risk of such harm to such public interests clearly outweighs the need for affordable housing, and [3] whether the public interest can be protected by reasonable changes to the affordable housing development." Id.

[7] Further, query the applicability of the well established principle that a directed grant of an application is an appropriate remedy only when it appears that the relevant municipal land use authority could reasonably reach only one conclusion on remand. See, e.g., *Bogue* v. *Zoning Board of*

*Appeals*, 165 Conn. 749, 753–54, 345 A.2d 9 (1974) ("It is true that when on a zoning appeal it appears that as a matter of law there was but a single conclusion which the zoning authority could reasonably reach, the court may direct the administrative agency to do or to refrain from doing what the conclusion legally requires. . . . In the absence of such circumstances, however, the court upon concluding that the action taken by the administrative agency was illegal, arbitrary or in abuse of its discretion should go no further than to sustain the appeal taken from its action. For the court to go further and direct what action should be taken by the zoning authority would be an impermissible judicial usurpation of the administrative functions of the authority." [Citations omitted.]). Although the plaintiff seems to agree that this general principle applies in the affordable housing context, the Appellate Court held that it does not, relying on our decision in *AvalonBay Communities*, *Inc.* v. *Zoning Commission*, 284 Conn. 124, 140 n.15, 931 A.2d 879 (2007), and its decision in *Wisniowski* v. *Planning Commission*, 37 Conn. App. 303, 320–21, 655 A.2d 1146, cert. denied, 233 Conn. 909, 658 A.2d 981 (1995), for the proposition that judicial remedies are more "expansive" in affordable housing appeals under § 8-30g (g) than regular land use appeals. *Brenmor Properties*, *LLC* v. *Planning & Zoning Commission*, supra, 162 Conn. App. 710 and n.30. As a general matter, application of this general principle in the affordable housing context seems inconsistent with the abuse of discretion standard of review. Nevertheless, given the commission's concessions, and the fact that the trial court did not abuse its discretion in determining that a directed grant was appropriate even under the usurpation rule, we apply the abuse of discretion standard of review for purposes of this certified appeal.

-------------------------