### FRANK S. PIZZO *v.* COMMISSIONER OF MOTOR VEHICLES
### (AC 19819)

Lavery, C. J., and Dranginis and Daly, Js.

Argued December 1, 2000—officially released April 3, 2001

*Jon L. Schoenhorn*, with whom, on the brief, was *Paula Gates*, for the appellant (plaintiff).

*Robert T. Morrin*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

DALY, J. The plaintiff, Frank S. Pizzo, appeals from the judgment of the trial court dismissing his appeal from the decision of the defendant commissioner of motor vehicles (commissioner) to suspend his license to operate a motor vehicle for refusal to submit to a chemical alcohol test pursuant to General Statutes (Rev. to 1999) § 14-227b[1] following his arrest for

[1] General Statutes (Rev. to 1999) § 14-227b provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine . . . .

"(b) If any such person, having been placed under arrest for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident operating privilege may be suspended in accordance with the provisions of this section if he refuses to submit to such test or if he submits to such test and the results of such test indicate that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight, and that evidence of any such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution, refuses to submit to the designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege may be suspended if he refused to submit to such test or if he submitted to such test and the results of such test

operating a motor vehicle while under the influence of intoxicating liquor or drugs. On appeal, the plaintiff claims that the court improperly concluded that substantial evidence existed on the record to uphold the hearing officer's findings that (1) the police had probable cause to arrest the plaintiff and (2) the plaintiff refused to submit to a chemical alcohol test. We affirm the judgment of the trial court.

The following facts and procedural history are relevant for resolution of this appeal. On January 7, 1999, at approximately 6:45 p.m., Officer Courtney Mankin of the Rocky Hill police department was dispatched to Shunpike Auto Repair, Inc., following the receipt of a complaint on a cellular telephone from a motorist, Michael Grilla, about an erratic driver. The allegedly

indicated that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight.

"(c) If the person arrested refuses to submit to such test or analysis . . . the police officer, acting on behalf of the Commissioner of Motor Vehicles, shall immediately revoke and take possession of the motor vehicle operator's license . . . for a twenty-four-hour period and shall issue a temporary operator's license . . . . The police officer shall prepare a written report of the incident and shall mail the report together with a copy of the completed temporary license form, any operator's license taken into possession and a copy of the results of any chemical test or analysis to the Department of Motor Vehicles within three business days. The report shall . . . be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for operating a motor vehicle while under the influence of intoxicating liquor or any drug or both . . . and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so . . . .

"(e) Upon receipt of such report, the Commissioner of Motor Vehicles may suspend any license or nonresident operating privilege of such person effective as of a date certain, which date shall be not later than thirty days after the date such person received notice of his arrest by the police officer. Any person whose license or operating privilege has been suspended in accordance with this subsection shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. . . ."

erratic driver was later identified as the plaintiff. In his complaint, Grilla alleged that the vehicle he was driving was almost rear-ended by another car, and that the driver of that car made an obscene gesture at him, which he responded to in kind. Grilla further stated that the other driver drove alongside his vehicle, shouted that he would kill him and then drove through a red traffic signal and into the Shunpike Auto Repair, Inc., parking lot. Grilla also provided a description of the driver. A passenger in Grilla's car confirmed Grilla's account of the incident and description of the driver.

When Mankin and another police officer, Richard Degan, arrived at Shunpike Auto Repair, Inc., she discovered that the motor vehicle in question belonged to a cashier working there and that the cashier had lent her car to the plaintiff. The cashier informed Mankin that the plaintiff had recently returned to Shunpike Auto Repair, Inc., and that he had been driving her motor vehicle. The plaintiff approached Mankin and confirmed the cashier's statement. Mankin noted a strong odor of alcohol on the plaintiff's breath, and noticed that his speech was slurred and that his eyes were bloodshot. Mankin asked the plaintiff whether he had been drinking alcohol, and he responded that he had consumed two beers. Two empty beer bottles were found in the motor vehicle. The cashier denied that the beer bottles belonged to her and stated that they were not in the vehicle prior to her lending the car to the plaintiff.

Grilla had accompanied the police officers to Shunpike Auto Repair, Inc., and informed Mankin that he wanted to press charges against the plaintiff. When Mankin explained to the plaintiff that motor vehicle charges were being made against him,[2] the plaintiff

---

[2] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. . . ."

became hostile and resisted arrest. The plaintiff refused to stand still and would not take his hands out of his pockets. As Mankin and Degan attempted to handcuff the plaintiff, he pulled his arms away and then pushed both officers. A struggle ensued between the plaintiff, Mankin and Degan, forcing Mankin to request additional police support.

Eventually, the plaintiff was subdued, arrested and transported to the police station. At the police station, Mankin provided the plaintiff with an implied consent advisory form, but the plaintiff claimed that he was unable to comprehend what was being recited to him.[3] Mankin then afforded the plaintiff the opportunity to contact an attorney before deciding whether to submit to the chemical alcohol test. The plaintiff telephoned his attorney, who was, however, unavailable for the next hour. Mankin informed the plaintiff that he could call another attorney, but the plaintiff declined. After Mankin pressed the plaintiff for a response, in the presence of Sergeant Joseph Vernali as a witness, the plaintiff refused to submit to the chemical alcohol test. In accordance with § 14-227b (e), the plaintiff's license was suspended for six months for refusing to submit to a chemical alcohol test.[4]

Pursuant to § 14-227b, the plaintiff requested, and was granted, an administrative hearing, which was held on January 25, 1999. The hearing officer suspended the plaintiff's driver's license for six months on the basis of findings that (1) the police had probable cause to arrest the plaintiff, (2) the plaintiff was placed under arrest, (3) the plaintiff refused to submit to a chemical

---

[3] General Statutes (Rev. to 1999) § 14-227b (a) provides: "Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine and, if said person is a minor, his parent or parents or guardian shall also be deemed to have given his consent."

[4] See footnote 1.

alcohol test and (4) the plaintiff had operated a motor vehicle.[5] In addition, the hearing officer entered subordinate findings that probable cause to arrest the plaintiff existed because of the plaintiff's bloodshot eyes and slurred speech, the strong odor of alcohol on his breath and the observations by a witness, Grilla, of the plaintiff's erratic driving. The plaintiff then appealed to the trial court,[6] which dismissed his appeal and affirmed the suspension. In affirming the decision of the hearing officer, the court stated that "this case clearly had probable cause." This appeal followed.

I

On appeal, the plaintiff first contends that the record lacks substantial evidence establishing probable cause to arrest him when (1) the hearing officer based his decision on hearsay statements, (2) the police officer involved, Mankin, failed to administer any field sobriety tests and (3) the hearing officer's finding that Mankin smelled alcohol on the plaintiff's breath is unsupported by the record. We disagree.

[5] General Statutes (Rev. to 1999) § 14-227b (g) provides in relevant part: "The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or did such person submit to such test or analysis, commenced within two hours of the time of operation, and the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. . . .

General Statutes § 14-227b (h) provides in relevant part: "If, after such hearing, the commissioner does not find on any one of the said issues in the negative or if such person fails to appear at such hearing, the commissioner shall affirm the suspension contained in the suspension notice . . . ."

[6] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

"[J]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act [(UAPA), General Statutes §§ 4-166 through 4-189], and the scope of that review is very restricted." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343, 757 A.2d 561 (2000). When confronted with an appeal from an administrative decision, "[n]either the trial court nor this court may retry the case or substitute its judgment for that of the commissioner." *Kirei* v. *Hadley*, 47 Conn. App. 451, 454, 705 A.2d 205 (1998). "[R]eview of an administrative agency decision requires [this] court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, supra, 343.

"Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *O'Rourke* v. *Commissioner of Motor Vehicles*, 33 Conn. App. 501, 507, 636 A.2d 409, cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994). "Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 343. "It is fundamental that a plaintiff has the burden of proving that the [hearing officer], on the facts before him, acted contrary to law and in abuse of his discretion." *Demma* v. *Commissioner of Motor Vehicles*, 165 Conn. 15, 16–17, 327 A.2d 569 (1973). The plaintiff therefore bears the burden of proving that the hearing officer's determination that probable cause to arrest existed was contrary to law or in abuse of his discretion.

"Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . In determining whether there was probable cause to arrest for operating a motor vehicle while under the influence of liquor, the court may consider, just as in an arrest for any other criminal offense, circumstantial as well as direct evidence. . . .

"To establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and this court cannot disturb the conclusions reached by the [hearing officer] if there is evidence that reasonably supports his decision." (Citations omitted; internal quotation marks omitted.) *Kirei* v. *Hadley*, supra, 47 Conn. App. 456–57.

In this case, there was substantial evidence before the hearing officer to support the hearing officer's finding that the police had probable cause to believe that the plaintiff had violated General Statutes § 14-227a. Mankin reported that the plaintiff's speech was slurred, he smelled of alcohol and his eyes were bloodshot. The plaintiff admitted that he had been drinking beer, and the police officers found empty beer bottles in the automobile that the plaintiff had driven. Further, Grilla provided a sworn statement to the police, detailing that he witnessed the plaintiff driving erratically and dangerously. That information was given contemporaneously with the observation of erratic operation, and the police officer came immediately to the scene. On the basis of those facts, we conclude that the record contains substantial evidence to support the hearing officer's finding that the police officer had probable cause to arrest the plaintiff for operation of a motor vehicle

while under the influence of intoxicating liquor or drugs.

The plaintiff contends that the hearing officer improperly relied on the hearsay statement of Grilla in finding that the police had probable cause to arrest. Hearings before administrative agencies, such as those before the commissioner of motor vehicles, are informal and are not governed by the strict or technical rules of evidence. See *South Windsor* v. *South Windsor Police Union Local 1480*, 57 Conn. App. 490, 505, 750 A.2d 465, cert. granted on other grounds, 253 Conn. 924, 754 A.2d 800 (2000). In the context of an administrative hearing, hearsay evidence is permissible and may properly be admitted without the presence of the witness at the hearing. *Paquette* v. *Hadley*, 45 Conn. App. 577, 581, 697 A.2d 691 (1997). Furthermore, it is within the province of the hearing officer to assess "the credibility of the witnesses and . . . to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." (Internal quotation marks omitted.) *Pickles* v. *Goldberg*, 38 Conn. App. 322, 325, 660 A.2d 374 (1995). Accordingly, it was proper for the hearing officer to consider the sworn statement of the witness, Grilla.

The plaintiff also argues that the hearing officer improperly found probable cause to arrest him because Mankin failed to administer any field sobriety tests. We do not agree. The administration of field sobriety tests, and the subsequent results, are not required by statute nor are they dispositive in finding probable cause to arrest for driving while under the influence of intoxicating liquor. See *Kolakowski* v. *Hadley*, 43 Conn. App. 636, 643, 685 A.2d 689 (1996). To find probable cause, "the [hearing officer] need only have a substantial basis of fact from which [it] can be inferred." (Internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, supra, 254 Conn. 344. Moreover, probable

cause is established "where the totality of the circumstances existing at the time of the plaintiff's arrest support[s] [such a finding] . . . ." (Internal quotation marks omitted.) Id., 345. Therefore, despite the absence of field sobriety tests, as stated above, the record reflects substantial evidence to warrant the hearing officer's conclusion that there was probable cause to arrest the plaintiff.

The plaintiff additionally asserts that the hearing officer improperly found probable cause in that the hearing officer stated during the hearing that alcohol lacks an odor. That isolated statement uttered during the proceedings does not negate the entire record in which substantial evidence existed establishing probable cause to arrest the plaintiff. Further, the court found that the hearing officer's statement that alcohol was odorless was a misprint in the transcript. We conclude that this claim is without merit and that the hearing officer properly found that probable cause to arrest existed.

II

The plaintiff next claims that the hearing officer improperly found that the plaintiff had refused to submit to a chemical alcohol test.[7] We disagree.

One of the four issues that a hearing officer must resolve during a license suspension hearing is whether the person involved refused to submit to a chemical alcohol test. See General Statutes (Rev. to 1999) § 14-227b (g).[8] As previously stated, "[j]udicial review of an administrative decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those

---

[7] See footnote 1.

[8] See footnote 5.

facts are reasonable. . . . In the context of a license suspension under the implied consent law, if the administrative determination of the four license suspension issues set forth in [§ 14-227b (g)] is supported by substantial evidence in the record, that determination must be sustained." (Citations omitted; internal quotation marks omitted.) *Schallenkamp* v. *DelPonte*, 29 Conn. App. 576, 580–81, 616 A.2d 1157 (1992), aff'd, 229 Conn. 31, 639 A.2d 1018 (1994).

The determination of whether the plaintiff's actions are tantamount to a refusal to submit to a chemical test is a question of fact for the hearing officer to resolve. See *Altschul* v. *Salinas*, 53 Conn. App. 391, 397, 730 A.2d 1171, cert. denied, 249 Conn. 931, 761 A.2d 751 (1999). Refusal to submit to a blood alcohol test may be established by one's actions or by verbally expressing one's unwillingness. *Lomen* v. *Commissioner of Motor Vehicles*, 61 Conn. App. 213, 217, 763 A.2d 676 (2000). On appeal, "our review is limited to determining whether the hearing officer's finding was supported by substantial evidence." *Altschul* v. *Salinas*, supra, 397.

Here, after the police officers informed the plaintiff about implied consent and chemical alcohol testing, he was afforded multiple opportunities to contact an attorney. When the plaintiff's attorney was unavailable, Mankin offered the plaintiff the chance to telephone another attorney, which the plaintiff declined. Further, in her report, Mankin stated that the plaintiff had refused to consent to the chemical alcohol test and that Sergeant Vernali witnessed that refusal.

"[This] court may not substitute its judgment for that of the commissioner and must affirm his decision unless it is clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." *Lomen* v. *Commissioner of Motor Vehicles*, supra, 61 Conn. App. 219. After close review, we conclude that the

record contains substantial evidence supporting the hearing officer's finding that the plaintiff refused to submit to chemical alcohol testing.

The plaintiff contends that his behavior did not constitute a refusal, but rather that he merely was insisting on speaking to an attorney before submitting to any test. That argument is without merit. When a plaintiff delays deciding whether to submit to a chemical alcohol test or expressly declines to take the test on the ground that he or she was unable to contact an attorney, such behavior may amount to a refusal to submit to a chemical alcohol test. See *Altschul v. Salinas,* supra, 53 Conn. App. 396–98. In *Altschul,* the plaintiff was arrested for operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a. Id., 393. The arresting police officer provided the plaintiff with the opportunity to contact his attorney before deciding whether to submit to chemical testing. Id., 393–94. After the plaintiff was unable to reach an attorney, the plaintiff stated that without legal counsel, he could neither refuse nor submit to a chemical alcohol test. Id., 394. The plaintiff's operator's license thereafter was suspended. Id. Affirming the hearing officer's suspension of the plaintiff's operator's license, this court found that the plaintiff's actions in *Altschul* provided substantial evidence in support of the hearing officer's determination that the plaintiff refused to submit to a chemical alcohol test. Id., 398.

In light of the evidence in the record previously described, which is similar to the situation in *Altschul,* we conclude that the hearing officer properly found that the plaintiff's actions established substantial evidence of a refusal to submit to chemical alcohol testing. Accordingly, the plaintiff's claim is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.