******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# WILLIAM DALY *v.* DEPARTMENT OF CHILDREN AND FAMILIES
## (AC 47155)

Suarez, Westbrook and Keller, Js.

*Syllabus*

The plaintiff, a former high school substitute teacher, appealed from the judgment of the trial court dismissing his appeal from the decision of a hearing officer for the defendant Department of Children and Families, who upheld the department's decision to substantiate allegations of sexual abuse of A, a high school student, and to place the plaintiff's name on its child abuse and neglect central registry. While working as a substitute teacher at A's high school, the plaintiff had engaged A through social media, met with her at a shopping plaza and a park, and kissed her. The plaintiff claimed, inter alia, that the trial court improperly concluded that there was substantial evidence in the record to support the hearing officer's finding that he had sexually abused A. *Held*:

The trial court properly concluded that the findings and conclusion of the hearing officer upholding the substantiation of the allegations of sexual abuse with respect to A were supported by substantial evidence.

The trial court properly determined that the hearing officer did not act unreasonably, arbitrarily, illegally or in abuse of her discretion in upholding the department's decision to place the plaintiff's name on its central registry, as the hearing officer found that all three criteria in the department's policy manual for placement of the plaintiff's name on the central registry, intent, severity, and chronicity, were supported by substantial evidence.

Argued November 13, 2024—officially released March 18, 2025

*Procedural History*

Administrative appeal from the decision of a hearing officer of the defendant upholding the decision of the defendant to substantiate allegations of sexual abuse and to place the plaintiff's name on the Central Registry of Persons Responsible for Child Abuse and Neglect, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Hon. Henry S. Cohn,* judge trial referee; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*Christopher DeMarco*, for the appellant (plaintiff).

*Matthew J. Parenti*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Nisa J. Khan*, assistant attorney general, for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, William Daly, appeals from the judgment of the trial court dismissing his appeal from the decision of a hearing officer of the defendant, the Department of Children and Families (department), who upheld the department's decision to substantiate allegations of sexual abuse against a child and to place the plaintiff's name on the Central Registry of Persons Responsible for Child Abuse and Neglect (central registry).[1] See General Statutes § 17a-101k (c) (1).[2] On appeal, the plaintiff claims that the court improperly concluded that there was substantial evidence in the

[1] Section 17a-101k-1 (14) of the Regulations of Connecticut State Agencies provides: " 'Central registry' or 'registry' means the confidential data file maintained as part of the department's computerized database, of persons who have been substantiated as individuals responsible for an act or acts of child abuse or neglect and for whom the commissioner [of the department] has made a determination, based upon a standard of reasonable cause, that the individual poses a risk to the health, safety or well-being of children . . . ." See also General Statutes § 17a-101k (a); *Matthew M.* v. *Dept. of Children & Families*, 143 Conn. App. 813, 818 n.2, 71 A.3d 603 (2013). Our Supreme Court has observed that "the stated legislative purpose of the central registry is to prevent or discover abuse of children." (Internal quotation marks omitted.) *Frank* v. *Dept. of Children & Families*, 312 Conn. 393, 426 n.19, 94 A.3d 588 (2014); see also *Hogan* v. *Dept. of Children & Families*, 290 Conn. 545, 573, 964 A.2d 1213 (2009); *Natasha B.* v. *Dept. of Children & Families*, 189 Conn. App. 398, 406, 207 A.3d 1101 (2019).

[2] General Statutes § 17a-101k (c) (1) provides in relevant part: "Following a request for appeal, the commissioner [of the department] or the commissioner's designee shall conduct an internal review of the recommended finding to be completed no later than thirty days after the request for appeal is received by the department. The commissioner or the commissioner's designee shall review all relevant information relating to the recommended finding, to determine whether the recommended finding is factually or legally deficient and ought to be reversed . . . ."

record to support the hearing officer's findings that (1) he had sexually abused a child and (2) his name should be placed on the central registry by the department.[3] We affirm the judgment of the trial court dismissing the plaintiff's administrative appeal.

The following facts, as found by the hearing officer,[4] and procedural history are relevant to this appeal. In March, 2022, the twenty-one year old plaintiff was employed as a substitute teacher and an assistant to the track coach at a public high school. The plaintiff previously worked as a substitute teacher at a public middle school. The principal of the middle school became aware that a female student in that middle school had interacted with the plaintiff on social media. The middle school principal advised the plaintiff "to make his social media private" and cautioned him against this type of contact with students enrolled in the middle school. The plaintiff denied knowing that the person who had contacted him attended the middle school where he worked.[5]

---

[3] In his statement of issues, the plaintiff also claims that the trial court "erred in dismissing [his] appeal." We need not address this claim separately, as it is based on the plaintiff's prevailing on either of his other claims.

[4] We note that the hearing officer relied on the department's Policy Manual (policy manual) in issuing her written decision. Our Supreme Court has stated: "Connecticut courts, including this court, have previously approved of using the policy manual as a reference in the absence of guidance in the relevant statutory provisions or regulations." *Frank* v. *Dept. of Children & Families*, 312 Conn. 393, 420, 94 A.3d 588 (2014). The policy manual is available to the public on the department's website at https://portal.ct.gov/ dcf/policy/legal/v12 (last visited March 7, 2025). See, e.g., id., 421 n.15. The criteria for recommendation for placement on the central registry is set forth in § 22-4, formerly § 34-2-8, of the policy manual. See *Natasha B.* v. *Dept. of Children & Families*, 189 Conn. App. 398, 405 n.9, 207 A.3d 1101 (2019) ("Effective January 2, 2019, the department has updated its policy manual. The current version of the policy [for placement on the central registry] may now be found in § 22-4."); see also Dept. of Children and Families, Policy Manual § 22-4.

[5] In her investigation protocol, the department's social worker stated that the middle school principal reported the following: "I had one time that I understood [the plaintiff] responded to a girl who followed him on Instagram. [The plaintiff] said hi to the student and followed the student back. When

On March 25, 2022, the department received a report of suspected abuse or neglect from a caller who had received an email from a student reporting that some student athletes at the high school were concerned that the plaintiff "was exchanging social media messages with female students." Five days later, the department received a second report about the plaintiff, this time from the police, regarding concerns of an inappropriate relationship between the plaintiff and another high school student, A.[6]

The plaintiff had met A at the high school in the course of his employment. He inquired if she was a member of the senior class, but did not ask specifically for her age.[7] They discussed their mutual interest in running. The two communicated on social media, where the plaintiff told A that she "was pretty" and asked if he could use her picture as the lock screen and wallpaper for his cell phone. In subsequent social media messages, the plaintiff told A that she was "super sweet and very pretty [and that] on a serious note, you're literally the prettiest girl I've ever seen in the whole entire world [with an emoji with heart eyes]." Additionally, there was evidence before the hearing officer that

I asked him, [the plaintiff] denied knowing it was a student. [The plaintiff] said he responded hi hoping to have the person tell him who it was. I told [the plaintiff] that he can't have contact on social media with students. I told him it needed to be private if he was going to substitute in the building."

[6] In view of this court's policy of protecting the privacy interests of juveniles, we refer to the children who were the subjects of the department's investigation in this matter by initials. See *Frank* v. *Dept. of Children & Families*, 312 Conn. 393, 396 n.1, 94 A.3d 588 (2014).

On February 28, 2023, the plaintiff, pursuant to Practice Book § 11-20A (h), filed an ex parte motion for permission to use a pseudonym in this administrative appeal. The trial court denied this motion on April 18, 2023.

[7] General Statutes § 17a-93 provides in relevant part: "(1) 'Child' means any person under eighteen years of age, except as otherwise specified, or any person under twenty-one years of age who is in full-time attendance in a secondary school, a technical school, a college or a state accredited job training program  . . . ."

A informed the department social worker that she was seventeen years old at the time of her interactions with the plaintiff.

the plaintiff complimented A's attire. A also stated that the plaintiff would not stop staring at her when he began working as a substitute teacher in her class while also looking at other girls in the class; indicated that she reminded him of a character on a television show; inquired about her sibling, who was a student in the middle school with whom he "played ball . . . at recess"; obtained her home address; and shared information about his interests and "his vacation life . . . ."

The plaintiff and A agreed to meet at a local shopping plaza where the plaintiff was accompanied by his parents. A and two others drove to the plaintiff's location, where he introduced A to his parents. A surmised that the plaintiff had spoken to his parents about her, as they inquired about her interest in nursing.

Two days later, the plaintiff and A met at a park, where he attempted to teach her how to skateboard. During this activity, the plaintiff held onto A's hips to assist her, and he helped her to get up after she fell. Afterward, they sat on swings at the park and talked, until a police officer informed them that the park was closing. The plaintiff walked A to her car, where he kissed her.

The high school principal subsequently became aware of concerns regarding the relationship between the plaintiff and A. Specifically, the high school principal learned that the plaintiff and A had communicated with each other on social media and had met at the park where they kissed. The plaintiff and A both confirmed these events to the principal, who then contacted the police.

The department commenced an investigation into the plaintiff's conduct with students. A informed an investigator that she felt as if the plaintiff was contacting her "obsessively" and that she felt pressured to kiss him at the park. A reported that she blocked the plaintiff

on social media after that incident and that she felt awkward upon seeing him in school. Although the plaintiff never sent A any sexual content or mentioned sex to her, she believed his intentions toward her were "obvious . . . ."

After A ended her online communications with the plaintiff on social media, he commented "cute" on the social media site of another female student. This student, D, replied that she thought the commentator was the plaintiff, her substitute teacher, which he confirmed. D then informed the plaintiff that she was fourteen years old. There was evidence that three middle school students learned of this online interaction and expressed their concerns to the middle school principal. Additionally, these students informed the middle school principal that they had heard from friends at the high school that the plaintiff had kissed A. "The [middle school] principal was familiar with the [plaintiff] and immediately called the high school principal to make sure that the [plaintiff] was removed from the building" and was informed that the plaintiff's employment had been terminated.

Following the completion of its investigation, the department substantiated the allegations of sexual abuse/exploitation[8] by the plaintiff against A and placed his name on the central registry. See General Statutes §§ 17a-101g and 17a-101k. The plaintiff subsequently

---

[8] Section 22-3 of the department's policy manual (policy manual) that was effective as of February 1, 2021, provides in relevant part: "Sexual abuse/ Exploitation is any incident involving a child(ren)'s non-accidental exposure to sexual behavior. *Evidence of sexual abuse includes, but is not limited to the following . . . other verbal, written or physical behavior not overtly sexual but likely designed to 'groom' a child for future sexual abuse.*" (Emphasis added.) Dept. of Children and Families, Policy Manual § 22-3, p. 2.

The current version of § 22-3, effective as of April 12, 2023, contains identical language. Unless otherwise noted, all references in this opinion to § 22-3 of the policy manual refer to the version effective as of February 1, 2021.

requested an administrative hearing to appeal these determinations.[9] In accordance with this request, an administrative hearing was held on January 9, 2023.

On January 19, 2023, the hearing officer issued her written decision upholding the department's decision to substantiate the allegations of sexual abuse against the plaintiff and to place his name on the central registry. At the start of her analysis, the hearing officer determined that the department established that the plaintiff, as a substitute teacher who met A while she was a student in his class, was a person given access to A by a person responsible for her and entrusted with A's care for the purposes of education in accordance with General Statutes § 17a-93 (15).[10] She further concluded that the plaintiff's "considerable effort to engage" A constituted grooming,[11] that is "verbal, written and physical behavior not overtly sexual, but likely

[9] Section 17a-101k-6 (a) of the Regulations of Connecticut State Agencies provides in relevant part: "Any person . . . who has been substantiated as an individual responsible for child abuse or neglect [and] against whom a registry finding is made . . . may request an administrative hearing to contest the department's decisions." See also General Statutes § 17a-101k (c) and (d); Dept. of Children and Families, Policy Manual § 6-5, pp. 11—12.

[10] General Statutes § 17a-93 (15) provides: " 'Person entrusted with the care of a child or youth' means a person given access to a child or youth by a person responsible for the health, welfare or care of a child or youth for the purpose of providing education, child care, counseling, spiritual guidance, coaching, training, instruction, tutoring or mentoring of such child or youth." See also Regs., Conn. State Agencies § 17a-101k-1 (6); Dept. of Children and Families, Policy Manual § 22-3, p. 1; see generally *Frank* v. *Dept. of Children & Families*, 312 Conn. 393, 415, 94 A.3d 588 (2014).

[11] In a recent decision, the United States District Court for the District of New Mexico explained grooming as follows. "The two major commonalities in the definitions reviewed as well as the empirical studies of grooming are (a) some sort of inappropriate behavior on the part of the prospective abuser (whether it is a bribe, boundary violation, invasion of privacy, misstatement of morality, mischaracterizing an interaction as a 'game,' isolation, emotional manipulation, etc.) and (b) the function of this inappropriate behavior is to increase the likelihood that the adult can sexually abuse the child (by, for example, gaining access to them, gaining their trust, silencing them, isolating them, desensitizing them to nudity or sex, etc.). Each component of the definition may have different topographies in individual cases (e.g., some-

designed to lead to sexual behavior between an adult teacher and a minor student. If the [plaintiff's] intent was not obvious during their preliminary conversations, it became crystal clear when he kissed her at the park. . . . The [plaintiff] deliberately sought out a romantic relationship with a student and kissed her. This conduct meets the [d]epartment's operational definitions of sexual abuse grooming . . . and supports the [d]epartment's decision to substantiate the [plaintiff] for sexual abuse."

Next, the hearing officer addressed whether the plaintiff posed a risk to children and whether his name should

times the inappropriate behavior is removing a door to the child's bedroom, or sometimes it may be buying the child a bikini), but the function of the behavior is to increase the likelihood of future abusive contact. [N.] Bennett & [W.] O'Donohue, 'The Construct of Grooming in Child Sexual Abuse: Conceptual and Measurement Issues,' 23 J. Child Sexual Abuse 957, 968 (2014).

"Sexual grooming is the deceptive process used by sexual abusers to facilitate sexual contact with a minor while simultaneously avoiding detection. Prior to the commission of the sexual abuse, the would-be sexual abuser may select a victim, gain access to and isolate the minor, develop trust with the minor and often their guardians, community, and youth-serving institutions, and desensitize the minor to sexual content and physical contact. . . . [G. Winters et al.], 'Toward a Universal Definition of Child Sexual Grooming,' 43 Deviant Behavior 926, 933 (2022)." *United States* v. *Bindues*, 741 F. Supp. 3d 967, 1008–1009 (D. N.M. 2024), appeal filed (10th Cir. August 15, 2024) (No. 24-2117).

Furthermore, we note that the United States Court of Appeals for the Sixth Circuit has stated that "courts have used the term [grooming] to describe a variety of behaviors that appear calculated to prepare a child for a future sexual encounter. See *United States* v. *Gonyer*, 761 F.3d 157, 167 (1st Cir. 2014) (taking minor on a trip, buying him gifts, and permitting him to smoke cigarettes); *United States* v. *Lee*, 603 F.3d 904, 915 (11th Cir. 2010) (sending graphic photographs and promising gifts) . . . ." (Citation omitted.) *United States* v. *Fox*, 600 Fed. Appx. 414, 419–20 (6th Cir. 2015); see also *United States* v. *Brand*, 467 F. 3d 179, 203 (2d Cir. 2006) (sharing pictures, flirting, and attempting to gain affection constitute classic grooming behavior in preparation for future sexual encounter), cert. denied, 550 U.S. 926, 127 S. Ct. 2150, 167 L. Ed. 2d 878 (2007); see generally *United States* v. *Halamek*, 5 F.4th 1081, 1088 (9th Cir. 2021) (expert testimony on grooming demonstrated how seemingly innocent conduct could be part of seduction technique).

be placed on the central registry. "In making this determination, the [d]epartment must consider the intent of the perpetrator, the severity of the conduct, chronicity or pattern of behavior and the presence of substance abuse or domestic violence." With respect to the issue of intent, the hearing officer stated that the plaintiff, an adult with no apparent cognitive limitations, knew or reasonably was expected to know, that a relationship with A was prohibited and that such a relationship was likely to have a detrimental impact on her. "Even without specific training, the [plaintiff] had been cautioned about his social media activities and the boundaries between teachers and students." With respect to the severity of the plaintiff's actions, the hearing officer disagreed with the assessment of the department's social worker who testified that A had not suffered any significant impact or that the plaintiff's conduct displayed a serious disregard for A's well-being. Instead, the hearing officer concluded that sexual abuse perpetrated by a person entrusted with the care of a child demonstrated a serious disregard for the child's physical and emotional well-being. Finally, as to chronicity, the hearing officer stated: "The record reveals that the [plaintiff] engaged in inappropriate comments with more than one student, and continued to do so even after he was admonished against the practice by a school principal. The record reveals a young man who was singularly focused on finding a girlfriend, and he used the female students at his place of employment as his dating pool."

Ultimately, the hearing officer concluded that the department satisfied its burden of proof[12] and that the

---

[12] See General Statutes § 17a-101k (d) (2) ("[t]he burden of proof shall be on the commissioner [of the department] to prove that the finding is supported by a fair preponderance of the evidence submitted at the hearing"); see also *Natasha B*. v. *Dept. of Children & Families*, 189 Conn. App. 398, 408–409, 207 A.3d 1101 (2019).

plaintiff's name properly was placed on the central registry. Specifically, the hearing officer stated: "The facts of this case clearly meet the criteria for placement on the [c]entral [r]egistry. The [plaintiff] engaged in grooming behavior with a student in his class and kissed her. As a person with sufficient education to be employed as a substitute teacher, and with the warnings of his prior principal, the [plaintiff] knew, or should have known, that pursing a relationship with a student was not only impermissible, but also demonstrated a serious disregard for the student's welfare. [A] should have been able to trust that all of her teachers employed at her school would keep her safe and free from the pressures and expectations of an intimate relationship. Finally, the [plaintiff's] conduct was not an isolated incident, but rather a pattern of behavior that the [plaintiff] followed in an attempt to find a relationship. The behavior by the [plaintiff] is exactly the type of the conduct that the [d]epartment's [r]egistry was created to prevent. The [plaintiff's] failure to recognize how his behavior might be perceived by a seventeen year old girl, or that the consequences of his conduct might cause chaos, rumor and suspicion amongst the other students, reinforces the conclusion that the [plaintiff] poses a risk to children such that his name should be maintained on the [c]entral [r]egistry . . . ."

On February 28, 2023, the plaintiff filed an administrative appeal pursuant to General Statutes § 4-183,[13] challenging the hearing officer's decision to uphold the substantiation of sexual abuse and the placement of his name on the central registry.[14] On April 24, 2023, the

_____

[13] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . . "

[14] Section 17a-101k-11 (b) of the Regulations of Connecticut State Agencies provides in relevant part: "Any individual found to be responsible for abuse or neglect who is aggrieved by the final decision of the hearing officer may appeal the final decision to the superior court in accordance with section

plaintiff amended his appeal to the trial court. The court, *Hon. Henry S. Cohn*, judge trial referee, heard argument from the parties on October 11, 2023. On October 26, 2023, the court issued a memorandum of decision dismissing the plaintiff's appeal. The trial court determined that the hearing officer's conclusions substantiating the determination of sexual abuse for purpose of the central registry and the decision to place the plaintiff's name on the central registry were supported by substantial evidence. The plaintiff thereafter appealed to this court. Additional facts will be set forth as necessary.

On appeal, the plaintiff claims that the court improperly concluded that the findings of the hearing officer substantiating the allegation of sexual abuse and placing his name on the central registry were supported by substantial evidence in the record and, as a result, the court improperly dismissed his administrative appeal. We conclude that the court properly dismissed the plaintiff's appeal.

We begin by setting forth the standard of review and legal principles relevant to the resolution of this appeal. "[J]udicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . *Neither this court nor the trial court may retry the case or substitute its own*

4-183 of the Connecticut General Statutes. . . ." See also General Statutes § 17a-101k (e); *Hogan* v. *Dept. of Children & Families*, 290 Conn. 545, 556, 964 A.2d 1213 (2009).

*judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . .* Conclusions of law reached by the administrative agency must stand if . . . they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . *The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion.*" (Emphasis added; internal quotation marks omitted). *Natasha B.* v. *Dept. of Children & Families*, 189 Conn. App. 398, 403–404, 207 A.3d 1101 (2019); see also *Frank* v. *Dept. of Children & Families*, 312 Conn. 393, 402–403, 94 A.3d 588 (2014); *Commission on Human Rights & Opportunities* v. *Dance Right, LLC*, 230 Conn. App. 53, 72, 329 A.3d 1008 (2025); *F.M.* v. *Commissioner of Children & Families*, 143 Conn. App. 454, 474–75, 72 A.3d 1095 (2013).

"The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . . It is fundamental that a plaintiff has the burden of proving that the [C]ommissioner [of Children and Families], on the facts before [her], acted contrary to law and in abuse of [her] discretion . . . . The law is also well established that if the decision of the commissioner is reasonably supported by the evidence it must be sustained. . . . Furthermore, § 4-183 (j) provides in relevant part that [t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . . The reviewing court must take into account contradictory evidence in the record . . . *but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . .*" (Citations omitted; emphasis

added; internal quotation marks omitted.) *L. D.* v. *Commissioner of Children & Families*, 217 Conn. App. 150, 164, 287 A.3d 617 (2022); see also *Frank* v. *Dept. of Children & Families*, supra, 312 Conn. 403; *1st Alliance Lending, LLC* v. *Dept. of Banking*, 229 Conn. App. 664, 684, 328 A.3d 681 (2024); see generally *Cohen* v. *Dept. of Energy & Environmental Protection*, 215 Conn. App. 767, 791–92, 285 A.3d 760 (substantial evidence standard is highly deferential and permits less judicial scrutiny than clearly erroneous or weight of evidence standards of review), cert. denied, 345 Conn. 968, 285 A.3d 1126 (2022), and cert. denied, 345 Conn. 969, 285 A.3d 737 (2022).

Next, we set forth the relevant statutory language. "The [central] registry scheme is codified in two sections that work in tandem: General Statutes §§ 17a-101g and 17a-101k. Section 17a-101g sets forth the [department's] responsibilities upon receiving a report of abuse or neglect of a child: classification; evaluation; investigation; and determination of whether abuse or neglect has occurred. General Statutes § 17a-101g (a) and (b). The statute directs that: [i]f the [C]ommissioner of [Children and Families (commissioner)] determines that abuse or neglect has occurred, the commissioner shall also determine whether: (1) [t]here is an identifiable person responsible for such abuse or neglect; and (2) such identifiable person poses a risk to the health, safety, or well-being of children and should be recommended by the commissioner for placement on the [central registry] established pursuant to section 17a-101k. General Statutes § 17a-101g (b). The [department] is directed under § 17a-101k (i) to adopt regulations to implement the provision of that statute. . . . In accordance with § 17a-101k (i), the department promulgated regulations to implement the central registry." (Citation omitted; internal quotation marks omitted.) *Natasha B.* v. *Dept. of Children & Families*, supra, 189 Conn. App.

404; see also *Hogan* v. *Dept. of Children & Families*, supra, 290 Conn. 568–70.

Additionally, we turn to the relevant regulations and the department's policy manual. Section 17a-101k-1 (4) of the Regulations of Connecticut State Agencies incorporates "sexual abuse" into the definition of child abuse for purposes of inclusion on the central registry.[15] See also Dept. of Children and Families, Policy Manual § 22-3, p. 2. The policy manual provides: "Evidence of sexual abuse includes . . . verbal, written or physical behavior not overtly sexual but likely designed to 'groom' a child for future sexual abuse." Id.

In the present case, the hearing officer found that the plaintiff met A while employed as a substitute teacher in the high school she attended. After discussing their mutual interest in running, the plaintiff initiated communications with A on social media.[16] The plaintiff repeatedly commented that A was "pretty" and asked to use her photograph as a background and lock screen on his cell phone. He described A as "super sweet" and sent her an "emoji with heart eyes." The two agreed to meet at a local plaza, where the plaintiff introduced A to his parents, who had been made aware of A and her interests. The plaintiff and A subsequently met at a park where he attempted to teach her how to skateboard. During this interaction, the plaintiff physically touched A by placing his hand on her hips to steady her on the skateboard and helped up her when she fell. After sitting together on a swing set, the plaintiff walked A to her car and then kissed her on the lips.

---

[15] Specifically, § 17a-101k-1 (4) of the Regulations of Connecticut State Agencies provides in relevant part: " 'Reports of child abuse or neglect' or 'referrals' means complaints received by the department alleging that a person under the age of eighteen . . . is in a condition that is the result of maltreatment such as . . . sexual abuse . . . ."

[16] There was evidence in the record that the plaintiff sought out A on social media.

The hearing officer concluded that, "[d]espite the differences in their circumstances and standing," the plaintiff "*made considerable efforts to engage* [A] . . . *Had the* [*plaintiff*] *been a boy in* [*A's*] *class, it could be said that he was wooing her.* But he was not a boy in her class, he was a teacher, and this was grooming behavior." (Emphasis added.) A described the plaintiff as "manipulative, and said that she knew what his intent was, even if he never discussed sex or implied anything sexual." Ultimately, the hearing officer concluded that the plaintiff "deliberately sought out a romantic relationship with a student and kissed her. This conduct meets the [d]epartment's operational [definition] of sexual abuse grooming . . . ." In dismissing the plaintiff's appeal, the trial court concluded that the determination by the hearing officer that the plaintiff had sexually abused A for purposes of the central registry was supported by substantial evidence. Specifically, the court stated: "The court . . . agrees with the hearing officer's application of the uncontested facts in the protocol to the conclusion regarding substantiation. As the hearing officer properly concluded, the plaintiff was not merely a fellow student. He was a teacher at the school. He took steps that were unwelcomed by the child to seek her to become involved in sexual behavior."

The plaintiff does not challenge the factual findings made by the hearing officer. Instead, he emphasizes the hearing officer's finding that the kiss between the plaintiff and A was " 'not overtly sexual.' " He further contends that the "record is completely devoid of any sexual references made by the plaintiff. In fact, [A] commented that the plaintiff never mentioned anything sexual in nature." Finally, the plaintiff asserts that there was no evidence that he exerted control or attempted to gain control over A, and, therefore, the hearing officer improperly concluded that he had sexually abused A

for purposes of including his name on the central registry. For these reasons, he contends that the hearing officer improperly determined that he had abused A. We disagree with the plaintiff's contentions.

First, we emphasize that, contrary to the argument of the plaintiff, the department's definition of grooming does not include an element of control. Rather, our careful review of the plaintiff's brief to this court leads us to conclude that he has imported that element of control from the department's definition of fondling, which is a separate and distinct means of sexual abuse. Section 22-3 of the policy manual provides in relevant part: "Evidence of sexual abuse includes, but is not limited to the following . . . fondling, including kissing, for the purpose of sexual gratification of the offender, or the purposes of shaming, humiliating, shocking or exerting control over the victim . . . ." Policy Manual, supra, § 22-3, p. 2.

We acknowledge that the hearing officer made an isolated reference to "fondling" as a basis to support the substantiation of sexual abuse. Nevertheless, a review of her decision in toto reveals that the primary reason to substantiate the plaintiff for sexual abuse was for grooming.[17] We emphasize that the department's definition of grooming does not contain a requirement that the perpetrator act with a purpose of sexual gratification or to exert control, or an attempt to do so. Further, contrary to the argument of the plaintiff, the finding that the kiss between the plaintiff and A was not " 'overtly sexual' " does not preclude a conclusion that his conduct constituted grooming. As such, the plaintiff's conduct toward A, including his numerous social

---

[17] See generally *Lazar* v. *Ganim*, 334 Conn. 73, 97–98, 220 A.3d 18 (2019) (although court made isolated reference to "the result of the primary would have been different" standard, it was clear from reading of decision in its entirety that it understood and applied proper "might have been different" standard).

media interactions, his compliments on her clothing and physical appearance, his plan to use her photograph as his background on his cell phone, his physical contact with her while teaching her skateboarding, his meeting with her outside of school on several occasions, and his initiating a kiss, constitutes substantial evidence in the record to support the hearing officer's determination that sexual abuse via grooming occurred.

The record amply supports the determination by the hearing officer that the plaintiff sexually abused A. See *Frank* v. *Dept. of Children & Families*, supra, 312 Conn. 402. We are mindful of our limited review pursuant to § 4-183, that we may not retry the matter or substitute our judgment for that of the hearing officer on the weight of the evidence or questions of fact, and that our ultimate duty is to determine whether the hearing officer, in issuing her order, acted unreasonably, arbitrarily, illegally or in an abuse of her discretion in view of all of the evidence. *Hogan* v. *Dept. of Children & Families*, supra, 290 Conn. 560–61. Applying this standard, we conclude that the findings and conclusion of the hearing officer upholding the substantiation of the allegations of sexual abuse with respect to A were supported by substantial evidence, and therefore the trial court properly rejected his claim to the contrary.

The plaintiff also contends that the court improperly determined that there was substantial evidence in the record to support the decision to place his name on the central registry. Specifically, he argues that none of the applicable factors, intent, severity, and chronicity, supported the department's decision to place his name on the central registry. We disagree.

Section 22-4 of the policy manual[18] "requires the department to make a separate finding as to whether

---

[18] Under the heading "Policy," § 22-4 of the policy manual provides: "In all cases in which the [d]epartment substantiates abuse or neglect by an identified perpetrator, the investigator in conjunction with his supervisor shall review the case for a determination of whether the perpetrator poses

a person responsible for child abuse or neglect poses a risk to children, and if so, whether the person's name should be placed on the central registry. In making that determination, the department must consider the responsible person's intent, the severity of the impact on the children, [and] the chronicity of the . . . conduct . . . ." *F.M.* v. *Commissioner of Children & Families*, supra, 143 Conn. App. 463–64; see also *L. D.* v. *Commissioner of Children & Families*, supra, 217 Conn. App. 159; see generally Policy Manual, supra, § 22-4. The presence of all three factors, intent, severity, and chronicity, is not required to place a person's name on the central registry. *Natasha B.* v. *Dept. of Children & Families*, supra, 189 Conn. App. 405 n.10 ("department policy manual . . . clarifies that intent, severity, and chronicity do not all have to be found" to include person on central registry); see also Policy Manual, supra, § 22-4, p. 1 ("[y]ou do not have to have all three elements to justify placement on the central registry").

In *F.M.* v. *Commissioner of Children & Families*, supra, 143 Conn. App. 454, we stated: "The intent factor focuses on whether the plaintiff had sufficient knowledge and resources, the ability to utilize them, and an understanding of the implications of failing to provide appropriate care . . . but that he made a conscious decision not to do so." Id., 464; see also Policy Manual, supra, § 22-4, p. 1 (in determining intent factor, department may also consider whether plaintiff intended to cause harm; whether there was documentation of cruelty by plaintiff, and whether plaintiff reasonably would

---

a risk to health, safety and well-being of children and make a determination as to whether the perpetrator should be recommended for placement on the [d]epartment's [c]entral [r]egistry. In every case, [d]epartment staff shall engage in an analysis as to the person's intent, the severity of the impact to the child, the chronicity of neglectful conduct and the involvement of substance abuse or intimate partner violence in the abuse or neglect to determine whether or not the person poses a risk to children." Policy Manual, supra, § 22-4, p. 1. The present matter does not involve substance abuse or intimate partner violence.

have been expected to know that his acts or statement would be detrimental to child's health, safety, or well-being).

In addressing the intent factor, the hearing officer stated: "The [plaintiff] . . . is an adult with no apparent cognitive limitations. At the time of the incident, the [plaintiff] was working as a substitute teacher in a local high school. He knew, or was reasonably expected to know, that a relationship between a teacher and a student was prohibited conduct and was likely to have a detrimental impact on the student. Even without specific training, the [plaintiff] had been cautioned about his social media activities and the boundaries between teachers and students. Nevertheless, the [plaintiff] pursued a relationship with his student and kissed her." The trial court similarly observed that "the plaintiff was aware that he could not exceed the boundaries between him and a student."

On appeal, the plaintiff contends that he, as a twenty-one year old, cannot be considered an adult because "male brains don't mature under twenty-five years of age . . . ." In support of this contention, he directs us to the admission by the department's investigator that she was aware of studies to this effect. The hearing officer, however, was not required to credit or rely on that evidence. See *Pizzo* v. *Commissioner of Motor Vehicles*, 62 Conn. App. 571, 578, 771 A.2d 273 (2001) (credibility of witnesses and determination of factual issues are matters within province of hearing officer). Additionally, the plaintiff's contention ignores the other evidence in the record that supports the hearing officer's determination of intent to support placing the plaintiff's name on the central registry. The hearing officer heard testimony from the department social worker that it was reasonable to expect that the plaintiff, as a substitute teacher in a position of authority over students, would know that he should not engage in a

romantic relationship with students such as A. Furthermore, his inappropriate conduct, described by the hearing officer as "wooing" A, occurred after he had been warned about maintaining boundaries with students by the principal at the middle school, including direction to avoid contact with students on social media. Mindful of our deferential standard of review, we conclude that the hearing officer's determination that the department had satisfied the intent criterion for placement on the central registry was supported by substantial evidence under the facts and circumstances of this case.

In addressing the severity factor, the hearing officer stated that there must be a determination of whether "there was a serious adverse impact to the victim, or a serious disregard for [her] welfare."[19] The hearing officer rejected the testimony of the department's social worker that there had not been any significant impact to A as a result of the plaintiff's conduct or that his conduct failed to demonstrate a serious disregard for her well-being. The hearing officer determined: "There are certain boundaries and behavior norms that are expected between students and teachers. When these are violated, there is an inherent risk of trust issues that may be triggered in the victim, even if this response is not immediate or tangible. Adult sexual behavior, even if limited to grooming and kissing, is a violation of the trust between a teacher, who is entrusted with

---

[19] Section 22-4 of the policy manual sets forth the following questions to consider with respect to the severity criteria for placement on the central registry: "Regardless of intent, would the perpetrator have been reasonabl[y] expected to know that his/her actions had a high likelihood of resulting in serious injury to the victim? Did the abuse result in death; rendering unconscious; concussion; internal head injury; lasting physical impairment of the normal functioning of the child; or from the perspective of qualified medical personnel, the necessity for immediate medical attention for the victim? Is the impact on the child likely to be of lasting duration? If no impact, was there serious disregard for the child's well-being?" Policy Manual, supra, § 22-4, p. 2.

the student's care and well-being, and the student. Further, the consequences of the relationship in terms of peer response also supports the conclusion that the [plaintiff] seriously disregarded [A's] well-being." In dismissing the plaintiff's appeal, the trial court noted that the plaintiff caused harm to A's "emotional status . . . ."

As we stated previously, the hearing officer was free to reject some of the testimony of the department's social worker. *Pizzo* v. *Commissioner of Motor Vehicles*, supra, 62 Conn. App. 578. The social worker also testified that A was impacted negatively in that she "felt uncomfortable and pressured and that it was an awkward and weird relationship to be participating in." A told the department social worker that the plaintiff had contacted her via text messages and social media. She felt some pressure to kiss him at the park, and she spent time with him just "to shut him up." She also concluded that his behavior was "manipulative." Finally, A became the subject of rumor and gossip among the students at two schools.

It is significant that the plaintiff's conduct and interactions with A occurred in the context of his employment as a substitute teacher at A's high school. In a somewhat analogous situation, our Supreme Court stated: "The plaintiff, as [a] teacher, was placed into a unique position to have an impact on [the student's] life. A young person's experience at school shapes his or her identity. School is where our youths learn about the world, how to interact with one another, how to work together, and how to form ties with people inside of a community infused with many cultures." *Frank* v. *Commissioner of Children & Families*, supra, 312 Conn. 425. In the present case, the plaintiff used his position as a teacher in a manner that impacted A's life negatively. On the

basis of the evidence, the hearing officer properly determined that the plaintiff's conduct toward A demonstrated a serious disregard for her well-being. Given the facts and circumstances of this case, the hearing officer's determination that the department had satisfied the severity criterion for placement on the central registry was supported by substantial evidence.

In addressing the chronicity factor, the hearing officer stated that "the [d]epartment reviews whether there was a pattern or chronic nature to the neglect regardless of the measurable impact to the victim."[20] In determining that this criterion supported placing the plaintiff on the central registry, the hearing officer found that he had made "inappropriate comments" to additional students near the time of his interactions with A that demonstrated a pattern where he exploited his position to try to obtain a girlfriend. See, e.g., *F.M.* v. *Dept. of Children & Families*, supra, 143 Conn. App. 465.

There was evidence of multiple incidents of the plaintiff's improper conduct with students. First, the plaintiff, after an interaction online with a middle school student, was warned by the principal at that school against engaging in such behavior and instructed to make his social media "private." Despite this directive, the plaintiff engaged in online communications with A, which in turn led to meeting her outside of school on two separate occasions, culminating with his kissing her. After A blocked him, she described the plaintiff as "desperate to find someone else." Thereafter, the

---

[20] Section 22-4 of the policy manual sets forth the following questions to consider with respect to the chronicity criteria for placement on the central registry: "Was this an isolated incident? If not, how often has it occurred, and over what period of time? Was there a pattern or chronic nature to the neglect or abuse regardless of the measurable impact to the victim? Was there a previous substantiation of neglect or abuse by this perpetrator and was the prior substantiation for an incident or conduct related to the current substantiation?" Policy Manual, supra, § 22-4, p. 2.

department received information from an anonymous caller that the plaintiff had contacted "some of the female students" of the school on social media. The anonymous caller identified one student in particular, a fourteen year old girl, D. The principal of the high school also told the department's social worker that rumors had been circulating regarding the plaintiff's contacts with students, although he was unable to provide any additional details. The mother of D stated to the department social worker that the plaintiff must have searched for D on social media or had a contact in common with D, the plaintiff told D where he lived, and he commented online that D was "cute." D's mother further reported to the department social worker that D had stated that the plaintiff "was posting on social media pictures of himself wearing [a school employee] badge and talking about how he smokes marijuana." After the plaintiff learned that D was only fourteen years old, he wrote "RIP" on her social media, which meant "dead" according to D. D's mother expressed her concern that the plaintiff would retaliate against her daughter.

Given this record, we conclude that the hearing officer's determination of chronicity was based on substantial evidence. We iterate that the hearing officer determined that "[t]he record reveals that the [plaintiff] engaged in inappropriate comments with more than one student, and continued to do so even after he was admonished against this practice by a school principal. . . . [The plaintiff] used the female students at his place of employment as his dating pool . . . [and his] conduct was not an isolated incident, but rather a pattern of behavior that [the plaintiff] followed in an attempt to find a relationship." Furthermore, we emphasize that it is not our role to second-guess the factual findings and discretionary decisions of the department's hearing officer. *L. D.* v. *Commissioner of Children & Families*,

supra, 217 Conn. App. 170–71. Thus, although it is not necessary to do so, the department presented evidence that supported the hearing officer's finding of all three factors, intent, severity, and chronicity. Those findings supported placing the plaintiff's name on the central registry. On the basis of the foregoing, we conclude that the court properly determined that the hearing officer did not act unreasonably, arbitrarily, illegally, or in abuse of her discretion in upholding the decision placing the plaintiff's name on the central registry. Accordingly, the court properly dismissed the plaintiff's administrative appeal.

The judgment is affirmed.

In this opinion the other judges concurred.